IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PARKLAND SERVICES, INC.**<br>**t/b/d/a FREESTECH,**<br>          **Plaintiff,**<br><br>          **v.**<br><br>**MAPLE LEAF FOODS, INC.**<br>**and**<br>**STELLAR CORPORATION,**<br>          **Defendants.** | **CIVIL ACTION NO. 12-6788** |

Baylson, J.                                                      April 18, 2013

### MEMORANDUM OF LAW RE: MOTIONS TO DISMISS

I.     **Introduction**

Plaintiff Parkland Services, Inc., t/b/d/a Freestech ("Freestech") sued Defendants Maple Leaf Foods, Inc. ("MLF") and Stellar Corporation ("Stellar"), for breach of contract, fraudulent inducement, misappropriation of trade secrets, conspiracy, and unjust enrichment, alleging Defendants unlawfully exposed Freestech's proprietary design plans for the construction of a meat-packaging plant in Ontario, Canada, in violation of a non-disclosure agreement. On January 25, 2013, MLF filed a Partial Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), contending Counts II and IV of the Complaint, for fraudulent and inducement and conspiracy, failed to state a claim. (ECF 9). On March 7, 2013, Stellar moved to dismiss the same Counts as well as Count I, for breach of contract, also under Rule 12(b)(6). (ECF 41). Freestech filed timely responses. (ECF 34, 44). For the reasons below, Defendants' motions are GRANTED.

II.     **Facts and Procedural History**

Freestech is a Pennsylvania corporation, based in Sinking Spring, Pennsylvania, that provides mechanical and electrical design engineering services to companies in the food industry. MLF is a packaged-food company headquartered in Canada, with its principal place of business in Ontario, with operations throughout the United States, Mexico, Asia, and the United Kingdom. Stellar is a Florida-based corporation that provides design, engineering, construction and mechanical services to other companies.

In June 2011, MLF contacted Freestech, seeking its advice and expertise in designing a new, "state of the art" meat-processing facility. (Complaint ¶¶ 13-14) (ECF 1). MLF presented Freestech with basic plans and concept drawings for the facility (id. ¶ 15), and related that its objectives were to reduce the required floor space and labor at the facility, while maximizing the facility's sanitation standards. (Id. ¶ 14). Freestech told MLF it believed it could design a more efficient processing system than represented in MLF's concept drawing, that would meet MLF's objectives and specifications. MLF responded that Freestech should proceed with designing its proposal, which Freestech did. (Id. ¶¶ 16-17).

In early July 2011, MLF requested that Freestech send it a copy of the proposal for the facility in a computer-aided design format. (Id. ¶ 18). Freestech responded that before it would send any formal design or plan, MLF would have to enter a non-disclosure agreement. (Id. ¶ 19). On July 26, 2011, Craig Richardson, of MLF, sent Richard Greener, of Freestech, an email, agreeing that MLF would not disclose any of the proposed designs or layouts provided by Freestech to third parties. The email stated:

> [W]e will NOT share your system specifications, layouts or budget costs with others and will not use it as the basis of bid packages to others. We will continue to use the bid package developed by MLF that we provided to you previously or a similar facsimile to that should process requirements or our needs change . . . . Any drawings provided may be dropped into our current layouts (developed either by

Stellar or MLF) for internal purposes only. They will NOT be shared with other vendors or consultants (only select MLF and Stellar folks assisting MLF).

(Id. Ex. A). Stellar was carbon-copied ("cc'd") on the email to Greener. (Id.). In late July 2011, Freestech provided MLF with complete design plans for MLF's facility. (Id. ¶ 24).

Between September and December 2011, Freestech, MLF and Stellar had ongoing communications about Freestech's proposed system. (Id. ¶¶ 25-26). The parties met in person in September 2011 to "review and discuss the particulars" of Freestech's proposal. (Id. ¶ 25). Freestech made several updates and revisions, to satisfy MLF's specifications. In December 2011, Freestech presented final design plans to MLF. (Id. ¶ 27).

In March 2012, MLF directed Stellar and a third-party consultant, St. Onge Company, to prepare a Request for Proposal ("RFP") for the meat-processing and storage system for the new facility. (Id. ¶ 29). The RFP was sent to several vendors, including Freestech. (Id. ¶ 30). According to Freestech, MLF, Stellar, and St. Onge included Freestech's designs for the facility in the RFP, rather than MLF's original designs. (Id. ¶ 31). On July 30, 2012, MLF informed Freestech that it had hired another vendor to build and install the system. (Id. ¶ 32). Freestech thus contends that MLF not only violated the non-disclosure agreement of July 26, 2011, by disclosing Freestech's trade secret to outside parties, but also denied Freestech the "reasonably expected fruits of its labors" by awarding the construction contract to another party. (Id. ¶¶ 32-35).

On December 5, 2012, Freestech filed a Complaint in this Court alleging the following causes of action against MLF and Stellar: (1) breach of contract, as to MLF and Stellar; (2) fraudulent inducement, as to MLF and Stellar; (3) misappropriation of trade secrets, as to MLF and Stellar; (4) conspiracy, as to MLF and Stellar; and (5) unjust enrichment, as to MLF. (ECF 1). On January 22, 2012, Freestech filed a Motion for a Preliminary Injunction, seeking to

enjoin MLF "from installing any system" based on Freestech's plans or drawings at MLF's new facility. (ECF5). On February 4, 5, and 8, 2013, the Court held hearings on Plaintiff's request for a preliminary injunction, during which witnesses for both Freestech and MLF testified. (ECF 17-29). The Court announced its Findings of Fact after the record was closed on the final day of the hearings. (ECF 38). The parties subsequently reached a settlement on the preliminary injunction and requested a consent decree, which the Court granted on April 16, 2013. (ECF 48).

As the preliminary injunction request was being litigated, MLF filed a motion on January 25, 2013, seeking dismissal of Counts II and IV of the Complaint, for fraudulent inducement and conspiracy, under Fed. R. Civ. P. 12(b)(6). (ECF 9). Stellar also moved for dismissal of Counts II and IV, as well as of Count I, for breach of contract, under Rule 12(b)(6). (ECF 41). Freestech filed Responses in Opposition (ECF 34, 44), and MLF and Stellar filed Replies (ECF 40, 45).

## III.    Legal Standards

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual allegations that "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint will satisfy this threshold test for facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Additionally, when the facts alleged equally support an "obvious alternative explanation" for what transpired, the plaintiff will not cross the plausibility threshold. Id. at 1951-52. "A complaint which pleads facts 'merely consistent with a defendant's liability, [] stops short of the

line between possibility and plausibility of entitlement to relief.'" Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

When presented with a motion to dismiss under Rule 12(b)(6), a district court should conduct a two part analysis. First, it should separate the factual and legal elements of a claim and accept all of the well-pleaded facts as true. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Second, the court should determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). See generally Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (holding that in reviewing Rule 12(b)(6) motions to dismiss, the court first "review[s] the complaint to strike conclusory allegations" and then evaluates whether the "well-pleaded components of the complaint" establish "the elements of the claim").[1]

## IV.    Analysis

### A.  Fraudulent Inducement Claims as to MLF and Stellar

Count II charges MLF and Stellar with fraudulent inducement. Under Pennsylvania law, for a plaintiff to prove fraudulent inducement, he must demonstrate the following elements by clear and convincing evidence: (1) a representation; (2) material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation;

---

[1] In the briefing, the parties disagreed as to whether the Court should take judicial notice of the record from the preliminary hearing in deciding the Motions to Dismiss. Defendants request that the Court limit its review to the four corners of the Complaint, while Plaintiff invites the Court to take notice of the record from the hearing. On a telephone conference on April 12, 2013, the Court informed the parties that for it to use the record from the preliminary hearing, it would have to convert the motion into one for summary judgment under Fed. R. Civ. P. 56(c) and offer all parties "a reasonable opportunity to present all the material that is pertinent to the motion." See Fed. R. Civ. P. 12(d); Flint v. Dennison, 488 F.3d 816, 822-23 (9th Cir. 2007) (recounting how the district court converted a motion to dismiss "into a Rule 56 motion for summary judgment based on the record developed in connection with the motion for preliminary injunction"); Campbell v. Davidson, 233 F.3d 1229, 1231 (10th Cir. 2000) (explaining that after the defendant moved to dismiss, following a preliminary injunction proceeding, "the district court transformed the pleadings into cross-motions for summary judgment"). It was agreed that the Court would limit its review to the four corners of the Complaint in deciding the Motions to Dismiss.

and (6) the resulting injury was proximately caused by the reliance. EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 275-276 (3d Cir. 2010) (citing Skurnowicz v. Lucci, 798 A.2d 788, 792 (Pa. Super. Ct. 2002)).

The Court concludes Defendants' Motions to Dismiss Count II should be granted because the Complaint contains no factual averments that, if true, could support a claim of fraudulent inducement. Plaintiff contends that MLF and Stellar's purported "representation" to Freestech– made with knowledge of its falsity and with the intent to mislead – was MLF's promise not to show the Freestech proposal to third parties. According to Plaintiff, MLF made this promise to manipulate Freestech into sharing its proprietary design, but Defendants never intended to abide by it. (Complaint ¶ 50) (ECF 1) (alleging "MLF and Stellar entered into the non-disclosure agreement merely to obtain the Freestech System for themselves in as expeditious manner as possible, and with no intent of complying with their obligations").  The problem is, the Complaint lacks factual allegations that raise "a reasonably founded hope that the [discovery] process will reveal relevant evidence to support the [inducement] claim." Twombly, 550 U.S. at 563 n. 8 (quoting Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)). The sole contention Plaintiff offers, to demonstrate fraudulent inducement occurred, is "that virtually immediately after obtaining the FreesTech System, [Defendants] incorporated the detailed designs and layouts into an RFP sent to third parties." (Id.).  However, this averment is contradicted by the sequence of events laid out elsewhere in the Complaint – Paragraphs 24 and 29 contend Freestech shared its design with MLF in July 2011, and the incorporation of the design into the RFP occurred in March 2012. (Id. ¶¶ 24, 29).  The passage of eight months hardly qualifies as "immediately after" MLF received the Freestech proposal. Overall, Plaintiff's claim of fraudulent inducement is no more than a "naked assertion." Iqbal, 556 U.S. at 678. It cannot survive a motion to

dismiss. Cf. Advanced Tubular Prods., Inc. v. Solar Atmospheres, Inc., 149 Fed. App'x 81, 86 (3d Cir. 2005) ("We find no merit to Tubular's claim that it was fraudulently induced. . . . The fact that Solar [] subsequently failed to effectively heat treat the non-sample coils is simply a breach of contract . . .").

This conclusion is further reinforced by the fact that Fed. R. Civ. P. 9(b) requires plaintiffs to plead "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see Williamsburg Commons Condo. Ass'n v. State Farm Fire & Cas., 2012 WL 5494797, at * 3 (E.D. Pa. Nov. 13, 2012) (holding that a fraudulent inducement claim is governed by Rule 9(b)'s heightened pleading requirement). To comply with Rule 9(b), a plaintiff must allege specific facts upon which it could be established that the defendant knowingly made a misrepresentation, with knowledge of its falsity, and with the intent to deceive. Here, there are no such specific facts alleged. Freestech merely avers that based on "information and belief," MLF entered a nondisclosure agreement which neither it nor Stellar intended to honor. This conclusory pleading does not meet the heightened standards of Rule 9(b).

Finally, Plaintiff's fraudulent inducement claim is rightly dismissed under Fed. R. Civ. P. 12(b)(6) because the claim is barred by the "gist of the action doctrine." Under Pennsylvania law, the "gist of the action" doctrine "preclud[es] plaintiffs from recasting ordinary breach of contract claims into tort claims." eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002). If a tort claim "aris[es] solely from a contract between the parties" or "essentially duplicates a breach of contract claim," dismissal is appropriate. Id. at 19. While a claim of fraudulent inducement is "not automatically barred" by the gist of the action doctrine because it may allege a duty of care "collateral to" the contract, the claim *will* be barred "where the precontractual statements that are the basis for the fraudulent inducement claim concern

specific duties that the parties later outlined in the alleged contract." <u>Integrated Waste Solutions, Inc. v. Goverdhanam</u>, 2010 WL 4910176, at * 10-11 (E.D. Pa. Nov. 30, 2010); <u>see also Williams v. Hilton Grp., PLC</u>, 93 Fed. App'x 384, 386 (3d Cir. 2004) (barring a plaintiff's claim that the defendant induced him "into signing the Letter of Intent . . . by lying about its intent to honor the agreement" under the gist of the action doctrine); <u>De Lage Landen Fin. Servs., Inc. v. Barton Nelson, Inc.</u>, 2008 WL 4791891, at *6-7 (E.D. Pa. Nov. 4, 2008) (Baylson, J.) (dismissing a claim for fraudulent misrepresentation because "the contracts . . . specifically discussed the issues that Defendant claims Plaintiff misrepresented"); <u>Penn City Investments, Inc. v. Soltech, Inc.</u>, 2003 WL 22844210 (E.D. Pa. Nov. 25, 2003) (Baylson, J.) (same).

Here, the "precontractual statements that are the basis of [Freestech's] fraudulent inducement claim" – that is, the promise by MLF not to disclose Freestech's design – concern "specific duties that the parties later outlined in the [] contract"– that is, the duty of non-disclosure as set forth in the non-disclosure agreement. <u>Integrated Waste Solutions</u>, 2010 WL 4910176, at * 11. This is a textbook case of a tort claim that duplicates a contract claim. Plaintiffs are free to charge Defendants with breach of contract, as they have done in Count I, but they cannot seek an alternative form of relief by pinning their contract action with a new label, as they have done in Count II. Accordingly, Plaintiff's claim of fraudulent inducement, as to both Defendants, is dismissed under Rule 12(b)(6).

### B. Conspiracy Claim as to MLF and Stellar

Count IV charges Defendants with conspiracy. Under Pennsylvania law, the elements of a civil conspiracy claim are: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act . . . (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." <u>Goldstein v. Phillip Morris, Inc.</u>, 854 A.2d 585, 590 (Pa. Super. Ct.

2004); Commonwealth v. TAP Pharm. Prods., Inc., 36 A.3d 1112, 1144 (Pa. Commw. Ct. 2011).

The Complaint alleges "MLF and Stellar acted in concert to deprive Freestech of its legal rights; to misappropriate Freestech's trade secrets; and to cause economic harm to Freestech." (Complaint ¶ 64) (ECF 1). Besides that language, the Complaint offers no explanation or illustration of the purported conspiracy – i.e., no allegation as to how and when the conspiracy was conceived, why it was carried out, or any overt acts done by Defendants in pursuance thereof. As was the case for Plaintiff's fraudulent inducement claim, the conspiracy claim is a "naked assertion." Iqbal, 556 U.S. at 678. There are no factual contentions that, if proven true, could demonstrate a conspiracy existed. Pleadings of such a threadbare nature are properly dismissed under Rule 12(b)(6). See St. Clair v. Citizens Fin. Grp., 340 Fed. App'x 62, 65 (3d Cir. 2009) (holding a "complaint must provide 'enough fact to raise a reasonable expectation that discovery will reveal evidence of an illegal agreement'" and "a bare assertion of conspiracy will not suffice" (citing Twombly, 550 U.S. at 555-56)); Bey v. Keen, 2012 WL 5051924, at *10 (M.D. Pa. Oct. 18, 2012) ("A plaintiff must [] allege with particularity and present material facts which show that the conspirators reached some understanding or agreement or platted, planed and conspired together . . . .").

Additionally, "[p]roof of malice, i.e., an intent to injure, is essential in proof of a [civil] conspiracy" claim under Pennsylvania law. Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979). "The element of malice requires a showing that 'the sole purpose of the conspiracy is to cause harm to the party who has been injured.'" Ferki v. Wells Fargo Bank, Nat'l Ass'n, 2010 WL 5174406, at *7 (E.D. Pa. 2010) (internal citation omitted). It is not sufficient for the plaintiff to demonstrate that the defendants conspired to advance their own business interests – rather, the plaintiff must prove that the defendants consciously intended to

cause *him* injury. <u>Montgomery Cnty. v. MERSCORP, Inc.</u>, 2012 WL 5199361, at \*13 (E.D. Pa. Oct. 19, 2012) ("Malice requires proof that the conspirators took unlawful actions with the specific intent to injure the plaintiff, instead of simply furthering their own interests through unlawful means."). Here, although Count IV states that "MLF and Stellar acted in concert to deprive Freestech of its legal rights . . . and to cause economic harm to Freestech," (Complaint ¶ 64) (ECF 1), a careful reading of the Complaint as a whole demonstrates that what Freestech is alleging – at base – is that MLF and Stellar acted for their own financial gain, and this had the incidental effect of depriving Freestech the value of its proprietary design. <u>Id.</u> ¶59 (alleging MLF and Stellar disclosed Freestech's trade secret "for commercial gain"); <u>id.</u> ¶ 43 (contending MLF and Stellar acted to "maximize their own commercial benefit at Freestech's expense"). When a claim of civil conspiracy essentially boils down to a claim that defendants acted for their own commercial benefit, courts will dismiss the claim due to its failure to adequately plead malice. <u>Synthes, Inc. v. Emerge Medical, Inc.</u>, 2012 WL 4205476, at \*37 (E.D. Pa. Sept. 19, 2012) ("[A] careful reading of the allegations discussing the foundation of the conspiracy reveals that it was intended to develop a new company which would provide financial benefit for those participating . . . . The fact that it may have been necessary to deceive Plaintiff or to otherwise willfully and maliciously commit various torts against Plaintiff in order to carry out this scheme does not equate to an allegation that the conspiracy was formed with the sole intent to injure Plaintiff."); <u>Spitzer v. Abdelhak</u>, 1999 WL 1204352, at \*9 (E.D. Pa. Dec. 15, 1999) (same). The same disposition is appropriate here.

### C. Breach of Contract Claim as to Stellar

Finally, Stellar moves to dismiss Count I, for breach of contract, under Fed. R. Civ. P. 12(b)(6). The Court concludes Stellar's motion also should be granted, because the Complaint,

even construed in the light most favorable to Freestech, fails to allege a contractual relationship between Freestech and Stellar existed, and this is a necessary condition for Freestech to have grounds to sue.

The Complaint makes two references to Stellar in its discussion of the non-disclosure agreement. First, the Complaint contends Stellar was carbon-copied on the email sent by Mr. Richardson to Mr. Greener on July 26, 2011, agreeing that MLF would not disclose Freestech's design. (Complaint ¶ 22) ("MLF 'open copied' Stellar on MFL's July 26, 2011 correspondence – i.e., on the Agreement – and thus, Stellar was aware of the proprietary nature of the FreesTech System; and both Stellar's and MLF's obligations under the Agreement."). Second, the Complaint states Mr. Richardson promised, in the aforementioned email, neither it nor its "agent/engineer, Stellar" would disclose Freestech's design. (Id. ¶ 21).

Assuming both actions occurred as Freestech alleges, neither would have rendered Stellar a party to the non-disclosure agreement. Being notified of a contract by being carbon-copied on an email exchange that gave rise to it does not make one a contract party. There are no allegations in the Complaint that Stellar helped negotiate the contract, agreed to be bound by it, or even derived a benefit from it. The Complaint merely alleges that Stellar was cc'd on Mr. Richardson's email. This is not sufficient to render Stellar a contract party. Nor did Mr. Richardson's promise that Stellar would safeguard Freestech's design convert Stellar into a party to the contract. The Complaint states that Stellar was MLF's agent throughout the time in question. (Complaint ¶ 12) ECF 1) ("Stellar, at all times, was an agent of MLF."); (id. ¶ 21) ("MLF agreed that it – and its agent/engineer, Stellar – would not disclose any of the proposed designs or layouts for the Freestech System to others . . . ."). But a principal cannot bind his agent to a contract merely by mentioning his agent in that contract – he must have the authority

to act on his agent's behalf. <u>Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.</u>, 181 F.3d 435, 445 (3d Cir. 1999) (holding that "under traditional agency principles" the only way "that an agent can be bound by the terms of a contract is if she is made a party to the contract by her principal acting on her behalf with actual, implied or apparent authority"); <u>see also</u> <u>DK Joint Venture 1 v. Weyand</u>, 649 F.3d 310, 318-19 (5th Cir. 2011) (holding "the defendant corporations [the principal] lacked the authority to bind Weyand and Thiessen [the agents]" to the contract). There are no allegations in the Complaint MLF enjoyed such authority with respect to Stellar here. Thus, while Mr. Richardson's promise might have created a duty incumbent on Stellar as a matter of tort law, i.e., to protect the proprietary nature of Freestech's design, it did not render Stellar a contract party.

In sum, Count I cannot be sustained as to Stellar. The Complaint fails to plead facts showing Freestech and Stellar enjoyed a contractual relationship, and Freestech cannot bring a breach of contract claim against a party with whom it did not have a contract.

***

For the forgoing reasons, Stellar and MLF's Motions to Dismiss are GRANTED. An appropriate Order follows.

O:\SARA\MAPLE LEAF\MOTION TO DISMISS MEMORANDUM-1.DOCX